Citation Nr: 1434246 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 09-37 483 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in 
Pittsburgh, Pennsylvania


THE ISSUES

1. Entitlement to service connection for arthritis of the lumbar spine and right knee, to include as secondary to the Veteran's service-connected disabilities, claimed as generalized osteoarthritis.

2. Entitlement to an initial evaluation in excess of 10 percent for the service-connected bilateral pes planus.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

A. Martinez, Associate Counsel

INTRODUCTION

The Veteran served on active duty from November 1954 to November 1957. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Pittsburgh, Pennsylvania. A November 2008 rating decision denied service connection for generalized osteoarthritis. An August 2009 rating decision awarded service connection for bilateral pes planus and assigned an initial 10 percent rating effective from September 2007.

In June 2013, the Board remanded the case for further development of the Veteran's claim for service connection for arthritis of the lumbar spine and right knee, claimed as generalized osteoarthritis; the mandates of the remand have been substantially met. See Stegall v. West, 11 Vet. App. 268(1998).

In an June 2013 decision, the Board denied the Veteran's claim for an initial evaluation in excess of 10 percent for his service-connected bilateral pes planus. The Veteran appealed the Board's decision to the U.S. Court of Appeals for Veterans Claims (Court). In a March 2014 Order, the Court granted a Joint Motion for Remand (JMR).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The preponderance of the evidence weighs against a finding that the Veteran's arthritis of the lumbar spine and right knee manifested during service, is causally or etiologically related to service, or caused or aggravated by his service-connected disabilities.

2. The Veteran's bilateral pes planus has not been shown to be productive of severe, flatfeet; while there has been evidence of pain on use accentuated, it has not been manifested by objective evidence of marked deformity, pain on manipulation, indication of swelling on use, or characteristic callosities.

3. The Veteran has arthritis of the left and right feet related to his service-connected left and right pes planus.

4. The Veteran's left and right pes planus with arthritis approximates the moderate degree of severity of a foot injury.


CONCLUSIONS OF LAW

1. The criteria for service connection for arthritis of the lumbar spine and right knee have not been met. 38 U.S.C.A. §§ 1110, 1111, 1131, 1132, 1154(b) (West 2002); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2013).

2. The criteria for the assignment of an initial evaluation of 10 percent for left pes planus with arthritis have been met. 38 U.S.C.A. § 1155, (West 2002); 38 C.F.R. § 4.71a, DC 5284 (2013).

3. The criteria for the assignment of an initial evaluation of 10 percent for right pes planus with arthritis have been met. 38 U.S.C.A. § 1155, (West 2002); 38 C.F.R. § 4.71a, DC 5284 (2013).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). See also Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Regarding the Veteran's service connection claim for arthritis of the lumbar spine and right knee, claimed as generalized osteoarthritis, the duty to notify was satisfied in letters from September 2008 and January 2009. The claim was subsequently readjudicated, most recently in a March 2014 supplemental statement of the case. Mayfield, 444 F.3d at 1333.

Regarding the Veteran's claim for an initial evaluation in excess of 10 percent for his service-connected bilateral pes planus, this appeal arises from disagreement with the initial evaluation following the grant of service connection for bilateral pes planus. Once service connection is granted, the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Thus, the Board finds that VA has also complied with its duty to notify regarding this claim. 

The Board also finds that the duty to assist requirement has been fulfilled. All relevant, identified, and available evidence has been obtained; specifically, the Veteran's service treatment records and medical treatment records are in the file. Private treatment records have also been associated with the file. The Veteran has not referred to any additional existing evidence that is necessary for a fair adjudication of the claims which has not been obtained. 

Pursuant to the Board's February 2013 remand attempts were made to retrieve the Veteran's Social Security Administration (SSA) records. In a March 2013 response SSA indicated that it did not have the Veteran's medical records because they had been destroyed; a March 2013 letter informed the Veteran that his SSA records could not be obtained, and provided an opportunity for him to submit them. In April 2014, the Veteran stated he had no more evidence to submit. 

Regarding the Veteran's service connection claim for arthritis of the lumbar spine and right knee, claimed as generalized osteoarthritis, the Veteran underwent a VA examination in February 2013. In June 2013, the Board found the examination inadequate and remanded the case for an addendum. An addendum opinion was obtained in January 2014, and the report and medical opinion are in the claims file. In a May 2014 Appellate Brief, the Veteran's representative states that the "opinion frustrates the Veteran's claim because it is not clear how the opinion is formulated without a discernable baseline." Although the January 2014 examiner responded "no" to whether a baseline level of severity could not be determined, the Board finds this fact inconsequential to the medical opinions provided and their adequacy, because the baseline level is inapplicable: the prompt asked whether a baseline level of severity could be determined based on medical evidence available prior to aggravation or the earliest medical evidence after aggravation, but the examiner found no aggravation. Moreover, the examiner noted that the conditions examined were not at least as likely as not aggravated beyond their natural progression regardless of an established baseline. The Board finds that taken together this examination and addendum opinion are adequate; they involved a review of the claims file, thorough examination of the Veteran, and supporting rationale. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007); see also Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 301 (2008).

VA did not obtain a medical opinion regarding the service connection claim for arthritis of the lumbar spine and right knee on a direct basis; however none was required because-as discussed below-there is no indication that the Veteran's arthritis of the lumbar spine and right knee may be associated with service. 38 U.S.C.A. § 5103A(d); 38 C.F.R. § 3.159; see McLendon v. Nicholson, 20 Vet. App. 79, 83-86 (2006). 

The Veteran also received VA examinations to evaluate his pes planus; the report and medical opinions are in the claims file. The Board finds that these examinations are adequate. They involved a review of the claims file, thorough examinations of the Veteran, and supporting rationales. See Barr, 21 Vet. App. at 311; Stefl, 21 Vet. App. at 124; see also Nieves-Rodriguez, 22 Vet. App. at 301.

II. Service Connection

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a link between the claimed in-service disease or injury and the present disability. See Davidson v. Shinseki, 581 F.3d 1313 (Fed.Cir.2009); Shedden v. Principi, 381 F.3d 1163 (Fed.Cir.2004); Hickson v. West, 12 Vet. App. 247 (1999). For chronic diseases listed in 38 C.F.R. § 3.309(a), including arthritis, the linkage element of service connection may also be established by demonstrating continuity of symptoms since service. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed.Cir.2013). 38 C.F.R. § 3.307(a)(3) provides for presumptive service connection for chronic diseases, including arthritis, that become manifest to a degree of 10 percent or more within 1 year from the date of separation from service. 

Service connection may be granted-on a direct basis-for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. § 3.303(d). 

In addition, service connection may also be granted under a theory of secondary service connection, where there must be: (1) evidence of a current disorder; (2) evidence of a service-connected disability; and, (3) nexus evidence establishing a connection between the service-connected disability and the current disorder. See Wallin v. West, 11 Vet. App. 509, 512 (1998). 

Furthermore, the regulations provide that service connection is warranted for a disorder that is aggravated by, proximately due to, or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. 
 
Lay assertions may serve to support a claim for service connection by supporting the occurrence of lay observable events or the presence of a disability or symptoms of a disability subject to lay observation. 38 U.S.C.A. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006).

In making these determinations, the Board has a duty to assess the credibility and weight given to evidence. Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997), Wensch v. Principi, 15 Vet. App. 362, 367 (2001). And, when considering whether lay evidence is satisfactory, the Board may properly consider internal inconsistency of the statements, facial plausibility, and consistency with other evidence submitted on behalf of the Veteran. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007). Although all the evidence has been reviewed in this case, only the most relevant and salient evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000).

The Veteran claims he has generalized osteoarthritis, to include as secondary to the service-connected disabilities. He says that osteoarthritis "has been a problem since [he] was in the military in 1957." 

A September 2008 private treatment record from Dr. W. notes that the Veteran has generalized osteoarthritis. Specifically, during the period on appeal, the Veteran has been diagnosed with arthritis of the right and left ankles, right wrist, right and left feet, lumbar spine, and right knee. Service connection is already in effect for residuals of fractures to the right ankle and wrist as well as residuals of a left ankle injury, which consider arthritis of the right and left ankles and right wrist, respectively. The arthritis of the left and right feet is considered in the Veteran's rating for bilateral pes planus, as explained below in the increased rating portion of this decision. 

The issue before the Board is whether service connection may be warranted for arthritis of the lumbar spine and right knee. Nonetheless, the preponderance of the evidence weighs against a finding that the Veteran's arthritis of the lumbar spine and right knee manifested during service, is causally or etiologically related to service, or caused or aggravated by his service-connected disabilities. 

The Veteran was afforded a VA examination in February 2013. The examiner found no evidence of rheumatoid arthritis, which would be an example of generalized arthritis. Furthermore, the examiner determined that arthritis of the right and left ankles, right wrist, and right and left feet were traumatic in nature and related to the fractures of the right ankle and wrist and pes planus in service, for which, as stated above, the Veteran is already service connected and his ratings include consideration of the pertinent arthritis (service treatment records document an incident in which the Veteran fractured his right ankle and wrist and injured his left ankle in a fall). 

The February 2013 examiner opined that the arthritis that was seen in the lumbar spine and right knee were considered to be within the normal progression of aging and are not secondary to the service connected injuries to the right wrist and right ankle. And, the mild pes planus would not be expected to aggravate or be the cause of the arthritis of the lumbar spine or right knee. 

In June 2013, the Board remanded the claim for an addendum opinion that provided further rationale. The addendum opinion was obtained in January 2014. First, the examiner opined that pes planus did not aggravate or cause the arthritis of the lumbar spine or right knee. Osteoarthritis does not spread throughout the body such as a rheumatoid arthritis which is a systemic condition. Arthritic changes viewed of the lumbar spine and right knee on radiograph are minimal and not beyond the natural progression of aging for the Veteran's age. Furthermore, there was no prominent limp noted on exam or otherwise to suggest an altered gait.

Second, the examiner opined that based on the evidence of the examination and radiographs, there is no medical evidence that the Veteran's service-connected right and left ankle disabilities caused the Veteran's arthritis of the lumbar spine and right knee or aggravated them beyond the natural progression of aging.

Accordingly, service connection is not warranted for the Veteran's arthritis of the lumbar spine and right knee under a theory of secondary service connection.

Service connection is also not warranted on direct or presumptive bases. See 38 C.F.R. 38 C.F.R. §§ 3.303(b), § 3.303(d), 3.307(a)(3). Service treatment records are silent for any complaints or findings of generalized osteoarthritis, including arthritis of the lumbar spine and right knee. Furthermore, the record does not reflect that the Veteran was diagnosed with these conditions within one year after separation from service; the earliest diagnosis of arthritis of the lumbar spine and right knee after service is from 2003. Consequently, there is no indication that the Veteran's arthritis of the lumbar spine and right knee is related to service, under a direct or presumptive basis, including based on continuity of symptomatology.

In reaching the above determinations, the Board has considered the Veteran's lay statements in support, including those that assert a relationship between his arthritis and service, as well as a connection between his arthritis and his service-connected disabilities. The Veteran is competent to testify as to his observations, but he has not demonstrated that he is an expert when it comes to diagnosis or etiology of orthopedic conditions. Unlike disorders that may be observable as to both their incurrence and their cause, such as a dislocated shoulder, the cause and diagnosis of arthritis is not readily apparent to lay observation. Kahana v. Shinseki, 24 Vet. App. 428(2011). However, the disability at issue in this case could have multiple possible causes and thus, falls outside the realm of common knowledge of a lay person. Jandreau, 429 F.3d at 1377. Moreover, even if credible and competent as to his observations, the Veteran's general lay assertions are outweighed by the specific and reasoned conclusions of the health care professional discussed above. See Nieves-Rodriguez, 22 Vet. App. at 304 (2008). Therefore, the Board finds that the Veteran's lay opinion is not entitled to significant weight as compared to the VA examiner's opinions.

For the foregoing reasons, the preponderance of the evidence weighs against a finding that the Veteran's arthritis of the lumbar spine and right knee manifested in service, is related to service or to his service-connected disabilities, or that it was aggravated by his service-connected disabilities; there is no doubt to be resolved; and the Veteran's claim must be denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

III. Increased Rating

In the JMR, the Board was directed to consider whether the Veteran's bilateral pes planus should be rated under a diagnostic code different from Diagnostic Code (DC) 5276 (flatfoot) in light of the medical evidence of arthritis of the feet and its link to bilateral pes planus. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Separate DCs identify the various disabilities. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history and reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; assigning a higher of two evaluations where there is a question as to which of two evaluations apply and the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and evaluating functional impairment on the basis of lack of usefulness and the effects of the disability upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. VA must assess the level of disability from the date of initial application for service connection and determine whether the level of disability warrants the assignment of different disability ratings at different times over the life of the claim, a practice known as a "staged rating." See Fenderson v. West, 12 Vet. App 119 (1999). The analysis in this decision therefore considers the possibility that staged ratings may be warranted.

Although all the evidence has been reviewed in this case, only the most relevant and salient evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000).

Service connection for bilateral pes planus was granted in an August 2009 Decision Review Officer Decision and initial 10 percent rating was assigned under 38 C.F.R. § 4.71a, DC 5276. 

The Rating Schedule provides that pes planus, when present in each foot, must be rated as a single disability entity under Code 5276. 38 C.F.R. § 4.71a. Under that code, a 10 percent rating is assigned for moderate pes planus, weight-bearing line over or medial to great toe, inward bowing of the tendo achillis, pain on manipulation and use of the feet, bilateral or unilateral. A 20 percent (unilateral) or 30 percent (bilateral) evaluation is assigned for severe flatfeet, with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, characteristic callosities. A 30 percent (unilateral) or 50 percent (bilateral) evaluation is also assigned for pronounced, flat foot, with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis on manipulation, not improved by orthopedic shoes or appliances. 38 C.F.R. § 4.71a, DC 5276.

38 C.F.R. §§ 4.40 and 4.45 require that the disabling effects of painful motion must be considered when rating joint disabilities. DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Upon VA examination in August 2008, the Veteran indicated that he had not received treatment for greater than 12 years since his podiatrist closed the practice. His only treatment included orthotics. He complained of daily achiness to the feet with any weight-bearing or walking greater than five minutes. He also complained of weakness and stiffness with weight bearing, as well as lack of endurance. He had no pain at rest after 10 minutes. There was no pain with non-weight bearing. He denied flare-ups. He used shoe inserts. He used a cane for his low back. There were no surgeries of the foot condition. Physical examination showed an antalgic gait and neoprene brace on the right knee. Abnormal shoe wear was seen on the lateral aspects of the shoes bilaterally. There was decreased propulsion on ambulation. The examiner found very mild pes planus of the bilateral feet. The arches were not correctable to palpation with weight bearing and non-normal alignment of the Achilles. He had no abnormal callus formation to the feet and no active lesions. The feet were warm to touch with good hair growth to the lower extremities and the dorsal surfaces of the feet. His monofilament was intact to the plantar surfaces bilaterally. Toes were down going. There was no significant pain on motion of the toes. There was no swelling, redness, or obvious deformities to the feet. There was 1+ pedal pulse. There was no additional joint involvement. X-rays showed minimal ossification lateral to base of right fifth metatarsal, possibly secondary to remote trauma, very minimal degenerative changes to the left first metatarsophalangeal joint, and each plantar angle was 150 degrees. 

VA outpatient treatment records dated in June 2009 show the Veteran denied pain in the feet. His gait was normal. In June 2010, the Veteran requested arch supports. In May 2012, he was measured for orthotics.

Upon VA examination in February 2013, the examiner indicated the Veteran had mild pes planus. The Veteran reported aching arch pain after walking more than five minutes. The examiner noted the Veteran was prescribed special shoes from podiatry, but this was mostly due to toenail pain secondary to onychomycosis. The Veteran had pain on use of the feet and pain accentuated on use. There was no pain on manipulation of either foot, indication of swelling on use, or characteristic calluses. The Veteran's symptoms were relieved by arch supports. He did not have extreme tenderness of the plantar surface of either foot. He had decreased longitudinal arch height on weight-bearing. There was no evidence of marked deformity of the foot, marked pronation of the foot, weight-bearing line that fell over or medial to the great toe, or lower extremity deformity other than pes planus. The Veteran did not have inward bowing of the Achilles tendon or marked inward displacement and severe spasm of the Achilles tendon. The Veteran's pes planus did not affect his ability to work. 

In sum, the evidence shows no more than moderate pes planus manifested by pain on use of the feet. There has been no evidence of severe flatfeet, with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation, indication of swelling on use, or characteristic callosities to warrant an increased rating. 38 C.F.R. § 4.71a. The pain on use accentuated is accounted for in the current 10 percent rating. The Board has noted the Veteran's complaints of pain experienced in his feet and thus, considered functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. See DeLuca, 8 Vet. App. at 206-7. However, neither the lay nor medical evidence reflects the functional equivalent of symptoms required for a finding of severe, flat foot disability as to warrant a rating higher than 10 percent under DC 5276.

The Board has considered other applicable criteria for rating the feet in order to assign a higher rating. First, there is no evidence of claw foot (DC 5278), hallux valgus (5280), hallux rigidus (5281), or malunion of or nonunion of the tarsal or metatarsal bones (DC 5283). See 38 C.F.R. § 4.72. And, the Veteran is already receiving the maximum rating under DCs 5277 (weak foot), 5279 (anterior metatarsalgia), and 5282 (hammertoes). 

The February 2013 VA examination of the Veteran's bilateral pes planus, nonetheless, revealed that the Veteran has arthritis in his feet. In a separate February 2013 VA examination, the examiner opined, in relevant part, that the Veteran's arthritis of the feet is at least as likely as not the result or caused by the development of traumatic arthritis secondary to pes planus.

As the Veteran's bilateral pes planus condition involves arthritis-which is linked to his bilateral pes planus, the Board has considered whether the disability should be rated under provisions for evaluating arthritis. Arthritis due to trauma is rated as degenerative arthritis according to DC 5003. Under DC 5003, degenerative arthritis established by x-ray findings will be rated on the basis of limitation of motion under the appropriate DCs for the specific joint or joints involved. 

Several of the DCs potentially applicable by analogy to the Veteran's bilateral pes planus are predicated, to some degree, on a loss of range of motion. See for example, DC 5278 (claw foot) which requires consideration of the number of toes that tend to dorsiflexion as well as the degree of limitation of dorsiflexion at the ankle. 

The Board finds that the Veteran's bilateral pes planus with arthritis is more appropriately rated by analogy to DC 5284. DC 5284 would provide separate ratings for each foot on the basis of whether the condition is moderate (10% disabling), moderately severe (20%) or severe (30%). 

It is unclear from the DC itself whether a condition's impact on range of motion in the region of the foot would be a pertinent factor in determining whether a particular foot injury should be evaluated as moderate, moderately severe, or severe. Further, the terms "moderate," "moderately severe" and "severe" are not defined by regulation. The Board notes, however, the overall regulatory scheme contemplates 10 percent ratings in cases of ankylosis in good weight bearing position, or problems so disabling that there is atrophy, disturbed circulation and weakness, or where there is inward bowing of the tendo achillis with pain on manipulation and use, or definite tenderness under the metatarsal heads, the great toe dorsiflexed, and limitation of dorsiflexion of the ankle. See 38 C.F.R. § 4.71a , DC 5272, 5276, 5277, 5278. In this case, the Board finds that the record indicates that the Veteran's left and right foot pes planus with arthritis approximates such degree of severity. Accordingly, the Veteran's pes planus will be rated individually under DC 5284 and assigned a 10 percent rating for each foot.

The Board further finds that assignment of 20 percent rating for moderately severe "foot injuries, other" is not warranted under DC 5284 for either foot. The overall regulatory scheme contemplates 20 percent ratings in cases of: ankylosis of the ankle manifested by in plantar flexion of less than 30 degrees; marked limited motion of the ankle; ankylosis of the subastragalar or tarsal joint in poor weight-bearing position; malunion of os calcis or astragalus manifested by marked deformity; astragalectomy; severe unilateral flatfoot; unilateral claw foot manifested by all toes tending to dorsiflexion, limitation of dorsiflexion at ankle to right angle, shortened plantar fascia, and marked tenderness under metatarsal heads; and moderately severe malunion of tarsal or metatarsal bones. See 38 C.F.R. § 4.71a , DC 5270, 5271, 5272, 5273, 5274, 5276, 5278, 5283. The record does not reflect that the Veteran's left and right pes planus with arthritis approximates such degree of severity. 

In reaching these determinations, the Board has considered the Veteran's statements in support of his claim, which assert that a higher disability rating is warranted. In this regard, the Veteran is competent to report on factual matters of which he has first-hand knowledge. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). However, while the Board may consider the Veteran's subjective statements regarding the severity of his disability, the Board notes that with respect to the Rating Schedule, the criteria set forth therein generally require medical expertise which the Veteran has not been shown to have. See King v. Shinseki, 700 F.3d 1339, 1344 (Fed. Cir. 2012). Accordingly, the Board finds the objective medical findings provided by the experts of record should be accorded the greater probative weight. See Guerrieri v. Brown, 4 Vet. App. 467, 473 (1993).

Furthermore, the discussion above reflects that the rating criteria reasonably describes and contemplates the severity and symptomatology of the Veteran's service-connected bilateral pes planus. The Veteran's disability is manifested by pain and tenderness. The effects of pain and functional impairment have been taken into account and are considered in applying the relevant criteria in the rating schedule. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca, 8 Vet. App. 202. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required and referral for an extraschedular rating is unnecessary. Thun v. Peake, 22 Vet. App. 111 (2008).

In addition, the Board has also considered whether an inferred claim for a total disability rating based on individual unemployability (TDIU) has been raised. Rice v. Shinseki, 22 Vet. App. 447 (2009). Entitlement to TDIU is raised where a Veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). In an increased rating claim, TDIU is not raised unless the Roberson requirements are met. Jackson v. Shinseki, 587 F.3d 1106 (Fed. Cir. 2009). Here, there is no contention or evidence that the Veteran is unemployable due to the service-connected pes planus. Accordingly, TDIU is not raised by the record.

For the foregoing reasons, the Board finds that individual ratings of 10 percent for left and right pes planus under DC 5284 are warranted.


ORDER

Service connection for arthritis of the lumbar spine and right knee, to include as secondary to the Veteran's service-connected disabilities, claimed as generalized osteoarthritis, is denied.

Entitlement to an initial evaluation of 10 percent, but not higher, for service-connected left foot pes planus with arthritis is granted, subject to the laws and regulations governing the award of monetary benefits.

Entitlement to an initial evaluation of 10 percent, but not higher, for service-connected right foot pes planus with arthritis is granted, subject to the laws and regulations governing the award of monetary benefits.




____________________________________________
M. E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs